■ RAMON PEREZ et al., Respondents, v WENDELL JORDAN, Appellant. SHIRLEY ROBERTS, Nonparty Appellant. [829 NYS2d 480]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered April 7, 2006, which denied defendant's motion to vacate a default judgment of the same court and Justice, entered June 18, 2005, and denied Roberts's motion to intervene, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the motions granted and the matter remitted for further proceedings.

On or about August 13, 2001, plaintiffs and defendant entered into a contract for the purchase of defendant's real property located in Bronx County. The contract set forth a purchase price of $245,000, required a down payment of $12,500, and was subject to a mortgage contingency of $232,500.

Subsequent to all parties signing this contract, two variations

were prepared. These two revised contracts had different purchase prices, down payments and mortgage contingencies. The second variation also contained a "seller's concession" of $15,600. These two revised contracts were initialed and signed by plaintiffs but not defendant. In fact, defendant did not approve these changes and was only made aware of them at the closing.

Mahandra Persaud, defendant's attorney for the closing, sent defendant correspondence indicating that an addendum to the contract would have to be signed at the closing, scheduled for October 3, 2001, to reflect a "seller's concession." Defendant consulted another attorney, Michael Fingerit, regarding this issue on the day before the scheduled closing. Defendant showed Fingerit his copy of the first contract and Fingerit concluded "something funny was going on," since it contained no seller's concession; he advised defendant to adjourn the closing. Since the then 88-year-old defendant did not want to do that, Fingerit advised him to take someone with him to the closing and call if he had any questions.

All parties attended the closing on October 3 and executed all documents necessary to complete the transaction. The deed was tendered and all parties were waiting for checks to be drawn by the bank attorney. At that point Michelle Williams, defendant's granddaughter who accompanied him to the closing, after consulting with Fingerit by telephone, adjourned the closing and took defendant's file from attorney Persaud. Defendant was then given a "time of the essence" adjourned date of October 18, 2001, but he refused to close on the sale.

Plaintiffs commenced this action for specific performance in January 2002. Defendant served an answer which claimed, inter alia, that when he realized he was "about to be a participant in a fraud," he was advised to leave the closing.

On November 7, 2002, defendant and Fingerit appeared at a preliminary conference where, inter alia, the parties were directed to appear at a compliance conference on March 27, 2003. When defendant failed to appear at the compliance conference, plaintiffs' counsel advised defendant's counsel, by letter dated March 29, that the conference had been rescheduled for April 10, 2003. Defendant did not appear on that date either, prompting the court, on its own motion, to issue an order of preclusion against defendant; plaintiffs were directed to file a note of issue and notice of inquest on or before April 25, 2003. The inquest was held on January 31, 2005. The court awarded judgment for plaintiffs for specific performance and directed settlement. The judgment was dated March 15, and entered June 18, 2005.

In February 2006, defendant moved by order to show cause to vacate and set aside the judgment pursuant to CPLR 317. His moving papers revealed that he conveyed the premises to his daughter, Shirley Roberts, in July 2003 on the assumption that since he had not heard anything from his attorney, plaintiffs had abandoned the action. He claimed he was unaware of the judgment until "several weeks ago," and he immediately consulted Fingerit who also knew nothing about it. Fingerit told defendant and defendant's new attorney that he would move to vacate the judgment immediately, but he did not do so.

Defendant argued that he had a good and meritorious defense to the action. He refused to complete the sale when he discovered that the contract had been revised to reflect terms and conditions to which he never agreed and which he believed was an attempt to defraud the mortgage company. Had he completed the sale, he believed he would have been a party to the fraud, subjecting himself to increased capital gains taxes as well as other penalties. He reiterated that he specifically refused to sign the amended contract(s) despite pressure from attorney Persaud, and did not authorize or consent to Persaud making any agreements to effect those changes.

Fingerit submitted a supporting affirmation claiming that he was never served by plaintiffs with a copy of the decision or notice of entry. While he was served with a note of issue and attended a settlement conference, he never received notice of a trial date from either the court or the calendar watch service. None of these documents were in his file.

On January 27, 2006, nonparty Roberts moved by order to show cause to intervene in the action. She confirmed that her father, defendant herein, had conveyed by deed the subject premises to her for good consideration on July 7, 2003. She claimed she was never personally served with a summons, and assumed the action had been abandoned by plaintiffs. Her allegations of a good and meritorious defense were essentially the same as defendant's.

In opposition to both motions, plaintiff's counsel stated that defendant "simply . . . changed his mind at the closing," that despite the "seller's concession" defendant would receive the same net amount for the sale, and that the mortgagee was fully aware of the seller's concession and still issued a written mortgage commitment. Arguing such transactions were not exceptional, plaintiffs submitted an affidavit from Andreas Markou, the executive vice president of Alliance Mortgage Banking Corp., who had reviewed the documents and the conclusion that "the Lender clearly knew of the Seller's concession of

$15,600, as all documents reflected this change." Annexed to his affidavit were the guidelines from HUD evidencing that concessions are proper, and that the concession in question was within the HUD guidelines.

Plaintiffs also argued that defendant and his counsel failed to appear at two compliance conferences but appeared before the court at a subsequent settlement conference where they were advised of defendant's default/inquest. This latter point was contested by defendant in reply papers, noting that the only notice he received of any default was in November 2005, which triggered his request to his attorneys to make the motions pending before the court.

The IAS court denied Roberts's motion to intervene as untimely. It also denied defendant's motion to vacate the judgment on the basis that he had actually participated in the proceedings by serving an answer and attending the preliminary conference, and hence, could not prevail under the provisions of CPLR 317. This appeal ensued.

The IAS court correctly found that the relief provided in CPLR 317 is not available to this defendant, as he could not "demonstrate both a lack of personal notice of the summons in time to defend, and the existence of a meritorious defense" (*Gibson, Dunn & Crutcher v Global Nuclear Servs. & Supply*, 280 AD2d 360, 362 [2001]). However, to "avoid punishing [defendant] for the mistakes of [his] counsel in a case where it does not appear that the opposing parties have been prejudiced by the additional increment of delay" (*Velez v Seymour Moslin Assoc.*, 278 AD2d 164, 165 [2000]), the court should have exercised its discretion pursuant to CPLR 2001 and treated the motion as having been made pursuant to CPLR 5015 (a) (*cf. Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 143 [1986]; *see also Benjamin Elec. Eng'g Works v A-J Contr. Co.*, 214 AD2d 339 [1995]). No substantial right of plaintiffs would have been prejudiced, and defendant has demonstrated both excusable default and a meritorious defense.

Defendant consistently maintained throughout this litigation that he did not know of or consent to the modifications of the contract, and thus plaintiffs should not be given specific performance of a contract to which he did not agree. Defendant thus has a meritorious defense to this action.

Defendant further contends that his default was excusable. He argued that neither he nor Fingerit knew of the defaults before they were served with the judgment in November 2005. Defendant claims his only default was the failure to appear at the March 27, 2003 compliance conference, as neither he nor

his attorney received notice of the April 10, 2003 conference. There is no indication of the manner of service of this notice. Moreover, while defendant and counsel appeared at a conference on October 15, 2003, it was a settlement conference at which no record was made, and they claim they were not advised of their default.

As it is "the policy of this court to allow matters to proceed to trial on the merits, whenever possible" (*Congress Talcott Corp. v Pacemakers Trading Corp.*, 161 AD2d 554, 555 [1990]), the court should have set aside the judgment and let the matter proceed to trial on the merits.

In view of the foregoing, the motion to intervene by nonparty appellant, who is apparently the current record owner of the property, should be granted. Concur—Andrias, J.P., Saxe, Nardelli, Sweeny and McGuire, JJ.